Fowler v. Crandall, 140 Wis. 291.

<hr>

WILL OF MULLAN: FOWLER, by guardian *ad litem,* Appellant, vs. CRANDALL, Respondent.

*September 16—October 5, 1909.*

*Wills: Mental capacity: Undue influence: Evidence.*

1. Evidence showing, among other things, that although the faculties of a testatrix were somewhat impaired by age she still had mental powers sufficient to call to mind the particulars of her business and to hold them in mind for such a time as to perceive and understand their obvious relations and to form a rational judgment in respect to them, is *held* to sustain a finding that she had sufficient mental capacity to make a will.

2. Evidence which, among other things, fails to show any solicitation by any one for the making of the will, or that the testatrix was susceptible to the influence of others in such matters, is *held* to sustain a finding that the execution of the will was not procured by undue influence.

APPEAL from a judgment of the circuit court for Dunn county: E. W. HELMS, Circuit Judge. *Affirmed.*

This proceeding was commenced in the county court of Dunn county by a petition for the probate of the will of Mary R. Mullan, deceased. A contest was filed to the probate in behalf of *Hattie Fowler,* an insane daughter and the sole heir at law of the deceased. The county court found that the testatrix did not have sufficient mental capacity to make a will at the time of the execution of the alleged will and that the execution of it was obtained by fraud and undue influence. Probate of the writing was denied. Upon appeal to the circuit court judgment was entered reversing the judgment of the county court and ordering the probate of the alleged will. This is an appeal from such judgment.

Mary R. Mullan died at Red Wing, Minnesota, February 13, 1908, aged seventy-four and one-half years. The alleged will was executed two months before at the residence of *R. D. Crandall* in Red Wing, to which the deceased had gone in the previous October from her home at Menomonie, Wisconsin. *Hattie Fowler,* a daughter and the sole heir at law of the deceased, is the contestant. She has been confined in a county insane asylum since 1892. The deceased also left surviving her three sisters and four brothers. Maggie Crandall, the wife of *R. D. Crandall,* was taken into the home of the deceased when she was seven years of age, and continued to live there until her marriage. She was never adopted, but is referred to in the will as the adopted daughter of the deceased. After providing for the debts of the deceased and for funeral expenses, the will gives *Hattie Fowler* $3,000; $10 is given to each of the brothers and sisters of the deceased; and the residue of the estate is then devised to Maggie Crandall and her husband. The deceased at the time of her death possessed about $100 worth of personal property. The balance of her estate, between $26,000 and $28,000, consisted of real estate, about one half of which was situated in Minne-

sota and one half in Wisconsin. Her indebtedness, exclusive of $1,000 incurred as funeral expenses, was from $5,000 to $6,000. The estate of the deceased had been accumulated by conducting a millinery store in Menomonie. She had been twice married; her first husband dying some fifteen years before she did, and her second husband four or five years before.

In behalf of the contestant of the will it is claimed that the evidence introduced shows that the deceased was of insufficient mental capacity to make a will; that she was physically weak and feeble, and that her mental faculties had become impaired to such an extent that she was unable to comprehend and understand her business affairs; that she was unable to keep in mind her relationship and natural obligations to her daughter and relatives, and lost mental control of herself and her property to an extent which evinced her incapacity to transact business or to make a will; and that this condition had existed for a considerable time before the making of the will in question. It is also claimed that she was so unduly influenced by one Boardman and the Crandalls to make this will that it is not the expression of her wishes and desires in the final disposition of her property, and that therefore it was a fraudulent proceeding by these parties for their personal gain and benefit. On the other hand it is claimed that the evidence shows that the deceased had never been a good manager of her property; that the feebleness of body and dullness of the senses were only the accompaniments of age, and that the insistence of the deceased for participation in her numerous business transactions indicates that she retained an unusual and sufficient mental capacity to do business and to attend to her affairs; that, far from being the victim of undue influence, she was a self-reliant and assertive person and always attended to her affairs; that she fully comprehended and understood them, and acted freely in the making of the will and the disposition of her property.

After a full hearing the circuit court held that she had sufficient mental capacity to make a will and that she was not induced to make it by the undue influence of others.    The court ordered the will admitted to probate.

*J. R. Mathews* and *R. E. Bundy,* for the appellant.

For the respondent there was a brief by *Freeman & Freeman,* and oral argument by *C. E. Freeman.*

SIEBECKER, J.    It is argued that the trial court's finding that the testatrix had mental capacity to make the will is against the clear preponderance of the evidence.    In passing on this question the fact that the trial court had the fullest opportunity to observe the witnesses while testifying and to give proper weight to their evidence must not be overlooked.    Its conclusions, therefore, are of weight and cannot be disturbed unless it is apparent from an examination of the evidence that they are against the clear preponderance of the evidence. It is strenuously asserted that the evidence clearly shows that Mrs. Mullan was so weak mentally at the time the will was made that she was incapable of understanding and comprehending the nature of the act, the extent of the disposition made by the will, who were the natural objects of her bounty, and the manner in which she desired that disposition should be effected.    Reliance for this contention rests mainly on the evidence tending to show the change in her physical health and strength, her changed mental attitude, and her unsuccessful administration of her business and financial affairs in the later period of her life.    It is undisputed that she had been an intelligent person of strong will and fair business ability in the prime of her life.    She had always evinced the characteristics of independence and self-reliance in the conduct of her affairs.    An examination of the evidence discloses that these characteristics were impaired in her old age, but there was not such a degree of impairment of her faculties and abilities in comprehending and understanding her busi-

ness affairs as constitutes mental incompetency to make a will. It is shown that she still possessed mental powers sufficient to call to mind the particulars of her business and the affairs of life, and to hold them in mind for such a time as to perceive and understand their obvious relations and to form a rational judgment in relation to them. This condition of her mental faculties evinced sufficient mental capacity to enable her to make a will.

As to whether the testatrix was unduly influenced to make this will, we are persuaded that the trial court in its opinion correctly expresses the state of the evidence on this issue. He found that the evidence was devoid of anything showing any solicitation by *Crandall* or his wife or any other person for the making of this will, that the evidence is well-nigh barren of facts tending to show that she was susceptible of being influenced in dealing with her property, and that her acts and conduct refute the claim that she was susceptible to the influence of others in these matters. Her attitude toward the Crandalls and others dealing with her was that of a self-willed and self-reliant person. While the transaction of the settlement with her tenant and the giving of the powers of attorney to *Crandall* and Boardman show a want of good business management and may indicate a want of fair dealing with her by all of these persons, it is not sufficient to show that she was in fact unduly influenced by them to make this will. We must hold that the trial court's conclusion on this question cannot be disturbed by this court, and that the judgment admitting the will to probate was correct.

*By the Court.*—Judgment affirmed